**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JASPER L. HAMPTON,

                Plaintiff,

vs.                                          Case No. 3:10-cv-01149-J-32JBT

HEARTLAND EXPRESS, INC. OF IOWA,

                Defendant.

_____

## <u>ORDER</u>

      Plaintiff, Jasper L. Hampton, filed suit against Defendant, Heartland Express, Inc. of Iowa, claiming that Heartland discriminated against him based on his disability. This case is before the Court on Heartland's motion for summary judgment. (Doc. 12.) The Court considers Heartland's motion and exhibits and Hampton's response and exhibits. (Docs. 12, 13, 17, 18, 19, 20.)

I.    **<u>Background</u>**

      Hampton, a diabetic born with a partially missing left arm limb, applied for a position as a truck driver with Heartland in 2008. (Doc. 17 at 1-3.) Hampton attended Heartland's driver orientation in July 2008, during which he was required to undergo various driving tests and a medical examination. (<u>Id.</u> at 3-4.) Heartland also required Hampton to provide medical documentation from his physicians regarding his diabetes and prosthesis. (<u>Id.</u> at 4.) Following the orientation, Heartland did not offer Hampton employment. (Id. at 5.)

      On August 21, 2008, Hampton filed a charge with the Equal Employment Opportunity Commission, claiming that Heartland discriminated against him based on a disability. (Doc.

19-4 at 2.)  The EEOC issued a determination letter on August 17, 2010, concluding that Hampton "was denied employment as a result of [Heartland's] perception that he was disabled, in violation of the Americans with Disabilities Act of 1990 (ADA)."  (Doc. 19-1 at 3.)[1] After the EEOC was unable to reach a settlement with Heartland, it issued a Notice of Right to Sue on September 14, 2010.  (Doc. 1 at 8.)  Thereafter, on December 14, 2010, Hampton filed a complaint against Heartland in this Court under the ADA alleging unlawful employment practices on the basis of disability.  (Doc. 1.)

## II.    Discussion

Summary judgment is proper "when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1314 (11th Cir. 2011); Fed. R. Civ. P. 56(a), (c).  The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).  All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party.  Ramos-Barrientos v. Bland, 661 F.3d 587, 594 (11th Cir, 2011).

---

[1] Although the Court is not relying on the EEOC determination letter, the Court notes that the letter may be additional evidence favorable to Hampton's case.  See Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1288 (11th Cir. 2008) ("[A]n EEOC determination is ordinarily admissible.").  The Court is not making a finding at this time as to whether the EEOC determination letter will be admissible at trial.

Heartland contends it is entitled to summary judgment because: (1) Hampton offers no direct or circumstantial evidence of intentional discrimination; (2) Hampton cannot establish that he is a "qualified individual with a disability" under the ADA; and (3) Heartland has a legitimate, nondiscriminatory reason for its failure to hire Hampton--specifically, Hampton's lack of medical clearance--and that Hampton fails to show that Heartland's reason is pretextual. (Doc. 12 at 15.)

A plaintiff may prove discrimination through either direct or circumstantial evidence. Damon v. Fleming Supermarkets of Fla., Inc., 196 F.3d 1354, 1358 (11th Cir. 1999). "Direct evidence of discrimination is evidence, that, 'if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (quoting Burrell v. Bd. of Trustees of Ga. Military Coll., 125 F.3d 1390, 1393 (11th Cir. 1997)). It "is composed of 'only the most blatant remarks, whose intent could be nothing other than to discriminate' on the basis of some impermissible factor." Id. (quoting Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989)). Hampton has not offered such direct evidence of discrimination.[2]

When the plaintiff attempts to prove intentional discrimination using circumstantial evidence, the Court must apply the burden-shifting framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). Schoenfeld, 168 F.3d at 1267; see

---

[2] Although Hampton points to comments allegedly made by Heartland employee Ricky Benton regarding Heartland's fear of liability due to Hampton's medical condition (Doc. 17 at 14-15), an inference is required to reach discriminatory intent.

Cremeens v. City of Montgomery, Ala., 427 F. App'x 855, 857 (11th Cir. 2011) ("We evaluate

ADA discrimination claims under the McDonnell Douglas burden-shifting analysis.").

> Under this framework, the plaintiff has the initial burden of
> establishing a prima facie case of discrimination. If he meets
> that burden, then an inference arises that the challenged action
> was motivated by a discriminatory intent. The burden then
> shifts to the employer to "articulate" a legitimate,
> non-discriminatory reason for its action. If the employer
> successfully articulates such a reason, then the burden shifts
> back to the plaintiff to show that the proffered reason is really
> pretext for unlawful discrimination.

Id. (internal citations omitted).

To establish a prima facie case of ADA discrimination, Hampton must show that he:

(1) is disabled; (2) is a qualified individual; and (3) was subjected to unlawful discrimination

because of his disability. Hilburn v. Murata Elecs. N. Am., Inc., 181 F.3d 1220, 1226 (11th

Cir. 1999). The ADA defines a "disability" as: "(A) a physical or mental impairment that

substantially limits one or more of the major life activities of such individual; (B) a record of

such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §

12102(2) (2008).[3]

> [T]he term "substantially limits" means "[u]nable to perform a
> major life activity that the average person in the general
> population can perform" or "[s]ignificantly restricted as to the
> condition, manner or duration under which an individual can
> perform a particular major life activity as compared to the

---

[3] The conduct relevant to Hampton's claims of discrimination occurred in 2008; thus, Hampton's claims are properly analyzed under the ADA as it existed prior to January 1, 2009, because the subsequent amendments do not apply retroactively. See Fikes v. Wal-Mart, Inc., 322 F. App'x 882, 883 n.1 (11th Cir. 2009).

> condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. §§ 1630.2(j)(1)(i), (ii) (1997). Major life activities are defined in the regulations as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i ) (1997). With respect to the major life activity of working, the regulations explain that the term "substantially limits" means "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(i) (1997).

Hilburn, 181 F.3d at 1226-27.

Viewing the evidence in the light most favorable to Hampton, he has shown that his partially missing limb substantially limits one or more of his major life activities. (See Docs. 18-10 at 2, 18-11 at 2.) As such, the Court declines to address, at this time, whether Hampton's diabetes qualifies as a "disability" within the meaning of the ADA, or whether Heartland regarded Hampton as disabled.

Hampton must also show that he is a qualified individual, which the ADA defines as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

> [A]n ADA plaintiff "must show either that he can perform the essential functions of his job without accommodation, or, failing that, show that he can perform the essential functions of his job with a reasonable accommodation." Davis, 205 F.3d at 1305. If the individual "is unable to perform an essential function of his . . . job, even with an accommodation, he is, by definition,

5

> not a 'qualified individual' and, therefore, not covered under the ADA. . . ."

D'Angelo v. Conagra Foods, Inc., 422 F.3d 1220, 1229 (11th Cir. 2005).  Viewed in the light most favorable to Hampton, the evidence establishes that Hampton was a qualified individual; specifically, Hampton submitted medical documentation stating that neither his diabetes nor his prosthesis prevented him from performing the essential functions of the position with Heartland.  (See Docs. 18-2, 19-2, 19-3, 20-1 at 3, 18-7 at 3.)

Finally, with regard to whether Hampton was subjected to unlawful discrimination because of his disability, this prong of the prima facie case is also satisfied.  Hampton submitted evidence of Heartland's negative attitude toward and treatment of Hampton based upon his disability, comments made by Heartland employees about Hampton's disability, and medical documentation provided to Heartland stating that Hampton could perform the job with no restrictions. (See Docs. 19-1, 18-7 at 3, 18-11 at 3, 13-1 at 8-10, 15.)  Thus, Hampton's prima facie case is established, and the burden shifts to Heartland to articulate a legitimate, nondiscriminatory reason for its failure to hire Hampton.

"In general, the employer has an 'exceedingly light burden' in setting forth legitimate, non-discriminatory reasons for termination." Woodbury v. Sears, Roebuck, & Co., 901 F. Supp. 1560, 1563 (M.D. Fla. 1995) (quoting Perryman v. Johnson Prods., Co., 698 F.2d 1138, 1142 (11th Cir. 1983)).  "The defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." Tex. Dep't of

<u>Cmty. Affairs</u>, 450 U.S. at 254-55 (internal citation omitted).  By producing evidence showing that Heartland may not have received all necessary medical clearances to hire Hampton, Heartland articulated a legitimate, nondiscriminatory reason for its actions.  (Docs. 13-5 at 5, 12-12 at 2, 13-7 at 3.)

The burden therefore shifts back to Hampton to show that Heartland's reason for not hiring him was merely pretextual.  "A plaintiff may show pretext and survive summary judgment by presenting evidence sufficient to demonstrate a genuine issue of material fact as to the truth or falsity of the employer's legitimate, nondiscriminatory reasons." <u>Schoenfeld</u>, 168 F.3d at 1269 (internal quotation omitted); <u>Tex. Dep't of Cmty. Affairs</u>, 450 U.S. at 256. The plaintiff must point to "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." <u>Silvera v. Orange Cnty. Sch. Bd.</u>, 244 F.3d 1253, 1258 (11th Cir. 2001) (internal quotation omitted).  Hampton has presented evidence showing a genuine issue as to whether Heartland's stated reason for not hiring him was pretextual, including, but not limited to, the conflicting evidence regarding what medical documentation Heartland actually received and when it received it, comments made by Heartland employees about Hampton's disability, and testimony regarding Heartland's attitude toward and treatment of Hampton based upon his disability.  (Docs. 19-1 at 2-3, 18-2 at 2-4, 19-2 at 2, 19-3 at 2-4, 18-7 at 3, 20-1 at 2-3, 18-11 at 3, 13-1 at 8-10, 15.)[4]

---

[4] In a footnote, Heartland implies that Hampton failed to exhaust his administrative remedies.  (Doc. 12 at 24 n.33.)  However, Heartland cites no Eleventh Circuit precedent on this issue, and the Court is unable to locate any that would directly impact the outcome of this case.  Moreover, even assuming there are situations in which a plaintiff seeking a truck

Accordingly, it is hereby

**ORDERED**:

1.  Defendant's Motion for Summary Judgment (Doc. 12) is **DENIED**.

2.  The case will proceed as stated in the Case Management and Scheduling

Order (Doc. 11).

**DONE AND ORDERED** at Jacksonville, Florida this 27th day of January, 2012.

TIMOTHY J. CORRIGAN
United States District Judge

jk.
Copies:

counsel of record

---

driving position must exhaust Department of Transportation ("DOT") administrative procedures before filing an ADA suit, this is not such a case. Thus, the Court rejects Heartland's exhaustion argument.

8